Good morning. My name is Chauncey Wood. I represent the appellant, Bernard Gadsen. I'd like to request two minutes for rebuttal. Yes, you may have it. I'd like to focus my limited time on a single issue. Whether in light of Kaiser v. Wilkie, the District Court committed plain error in relying on the guidelines commentary, expanding the unambiguous term loss to include intended loss. Every other federal circuit that has considered the matter on the merits, six of them now, has held that if a guideline term is unambiguous, Kaiser requires courts to reject commentary that expands the definition of that term. Moreover, one circuit, the third, has considered the precise substantive question here in a published decision. Whether the term loss in the guideline 2B1.1 unambiguously refers only to actual loss. In U.S. v. Banks, the third circuit concluded that it does, and therefore the commentary expanding the definition of loss to include intended loss is invalid. Was the third circuit case a case where they applied plain error review? Banks was not a plain error case. Henderson, a subsequent third circuit case, was. But Banks is the one we're concerned with, because plain error changes once you have the bank's precedent. So the threshold question that we have on this issue, I think, is it clear or obvious that the term loss is unambiguous? I take your Honor's point, and I think that's absolutely fair. I would note, well, this circuit, first of all, this circuit, I'm addressing your question, you're spot on, Your Honor. This circuit has not yet addressed the question of what loss means post-Kaiser. And Mr. Gadsden's trial counsel did not raise the issue at his sentencing hearing, to your point. So cutting to the chase, the real question here, as you're suggesting, is whether, in light of Kaiser, which was decided well before the sentencing in this case, the district court's reliance on intended loss was plain error. Why exactly do you say it's clear that the word loss, no matter the context, unambiguously refers only to a loss that has occurred, as opposed to a potential loss, a feared loss, an intended loss? There are all sorts of different losses, all sorts of different adjectives we could put. Without an adjective, why don't you say that it encompasses the entire universe of losses, rather than presuming that it just means an actual loss that has occurred? Well, I think the strongest argument I can make to you is that the one circuit, you don't care about my opinion, the one circuit that has actually substantively addressed this specific question, the third, in Banks, concluded that it includes only actual loss. But that's the most compelling point. No other circuit has found anything other than that since Kaiser. But here, the context that we have here is a conviction for attempted or bank fraud. So, in that context, it would seem quite natural that in assessing the severity of the crime, and hence taking into consideration the guideline application, that one would look at the loss that was intended, since the crime doesn't require any loss at all, as long as it was an intended loss. So, the first answer is a legal answer. The government has not actually made this argument on appeal, so it's clearly waived. The second answer, the governing statute... Excuse me. Waiver is a doctrine that applies differently to appellants and appellees, right? An appellant is required to make certain arguments on paying a waiver. Once those arguments are waived, we can affirm the challenge point on any ground made manifest by the record, whether or not the appellee has raised it, as long as it's evident in the record. I understand that, and take your point, Your Honor. I would simply note that the government hasn't actually made that argument to this point in its brief. But the governing statute here, the charge to which Mr. Gadsden pled guilty, is 18 U.S.C. section 1344. And the language of that statute provides for punishment for fraud, essentially, or attempted fraud. But the governing guideline section is U.S.S.G. 2B.1.1, which provides the base offense level for violations of this statute depend on the amount of the loss. And so, what I'm suggesting is that the guideline, which is controlling here, very specifically requires, in determining sentence, for this finding of guilt on this charge, that you look at loss. So, I think that we are bound by that condition. Yeah, but that doesn't answer Judge Keada's question. Because in the case of an attempted fraud, when you look at the loss, the only thing you can look at is the intended loss, because there won't be an actual loss. Because the attempt didn't succeed. That's why it's charged as an attempt. Well, on the facts of this case, that's respectfully not true. Well, but I'm looking at the statutory charge the same way as you're looking at the language of the guideline. Sure. I'm playing tennis this weekend. I fear a loss. I fear a loss, correct. Yes. Is that an actual loss now? I don't think it is. It is not an actual loss. You're talking the unadorned word. Because of the context, we know what type of loss we're talking about here. Hopefully not a certain loss. My response would be, when my parents disciplined me for losing my mittens, we all know what the crime was. They disciplined me when I actually lost my mittens. They didn't punish me for intending to lose my mittens. Yes, but how about when you stepped into the road and the car didn't quite hit you? I'm not following the guidelines. The violation of the statute, the sentence for violation of the statute here, 1344, is controlled by the guideline. The guideline very clearly instructs to look at loss. The word loss has a clear meaning. That clear meaning is actual loss. Intended loss is simply as a matter of plain meaning, not intended loss. It is actual loss. Intended loss suggests the future. First of all, I would again go back to the single circuit that's actually considered the specific question. And that circuit has concluded its actual loss. But then beyond that, the simple plain meaning. And then finally, plain meaning, precisely because the meaning of the loss is plain, it must be a plain error not to apply that meaning. And that is where we land here, that we have plain error in this case in applying intended loss instead of actual loss. Thank you. Thank you. Thank you, counsel. At this time, counsel for the government would introduce himself on the record to begin. Good morning, your honors. Benjamin Block of the United States. Mr. Block, could you pull your mic up? Thank you. Is that better? Your honor, sometimes the simplest way to resolve a case is also the correct one. Here, the court can and should resolve defendant's claims on a harmless error analysis. The defendant has raised three issues with respect to the court's sentencing. The first is acceptance of responsibility. The second is relevant conduct with respect to the auto loan. And the third is this issue of intended loss. The first two clearly are covered by this court's precedent with respect to district court's affirmative statement that he has untethered the sentence from the guidelines. But how – I can understand. Our precedent has – here's a guideline issue. It could be resolved X. It could be resolved not X. And the judge says, having considered that, it doesn't make any difference to me because whether it's X or not X, I would give this sentence. That's scenario one. It seems to me we don't have that here precisely because we have a plain error situation. The X versus not X was never raised or considered by the court on the record. So how could we place any weight on the court's judgment that it would give a certain verdict when it isn't informed as to the guideline calculation? Because it doesn't even know it's varying from the guidelines. Understood. And so setting aside the first two claims of error, which I think are clearly covered by the court's precedent, with respect to the plain error issue of intended loss, both the Supreme Court and this court have found that a harmlessness analysis is appropriate even with respect to unpreserved guidelines claims where the record shows that the lower court would have imposed the same sentence regardless. And the Supreme Court decision is in Molina's – Molina-Martinez. Right. But how do you say that the judge would have imposed the same sentence had he known what the guideline required? The Supreme Court – When there's no suggestion that anyone pointed out to him what it required. Correct. And in Molina-Martinez, the Supreme Court, and in Hudson 823 F. 3rd. 11, this court found that by doing a fulsome analysis of the record and assessing the district court's comments at the time, if the court feels confident that the district court would have imposed the same sentence, it can find harmlessness. Yeah, but in those cases, in both of those cases, the district court had made that statement in the face of known arguments and said – it said, in effect, regardless of how those arguments turn out and regardless of what the resultant argument that was never called to the district court's attention and that the record gives no indication at all that the district court thought of, never mind considered. So how can we say with confidence that had the district court been aware of the possible applicability of Kaiser and how that affected the loss calculation, it would have imposed the same sentence? I'm not 100% certain that that's correct. Both Molina-Martinez and Hudson involved plain error, unpreserved claims. But I'll turn to the substance of Your Honor's question, which is, was this plain error by the district court? And here, the defendant cannot win on plain error because there simply was no contrary clear and binding precedent that prohibited the There was clear and binding precedent from this court, both prior to Kaiser and after Kaiser, that intended loss was an appropriate means of calculating the guidelines. And that should end the inquiry. The defendant has not cited any case in which a court of appeals on plain error review has found Kaiser to contradict previous binding precedent with respect to intended loss. The only two courts to consider this issue on plain error review are Limbaugh from the Fourth Circuit and Corker from the Eleventh Circuit. And both of those courts said this is not a winning and the Eleventh Circuit decision in Dupree, which were a de novo review of other Kaiser claims under 4B1.1. And there, they were willing to consider and indeed found that Kaiser changed their previous holdings. How much weight do you think our decision subsequent to Kaiser, which continue to rely on this commentary, should carry? I think they carry weight in that they signal that this court, certainly to this point, has not viewed Kaiser as a sea change in the analysis of the guidelines. And that would be true even though the question of whether the guideline itself is ambiguous or why is that so? Because, well, one, this court has already considered whether Kaiser upends all of its prior precedent with respect to the guidelines in the Lewis decision and found that it does not. And that decision is controlling and this panel is bound by it. So in the absence of clear and binding precedent, there simply can't be plain error by the district court. If this case comes back on de novo review and indeed my district has a case in which this issue was preserved and will be presented to the court in the near future, the court can certainly apply the Lewis analysis, go back to its prior decisions and determine is this guideline ambiguous? And if it is, do our prior decisions adequately take that ambiguity into account in their holdings? So... Well, you're not suggesting, are you, Mr. Block, that there has to be a prior precedent of the circuit in order for there to be plain error? I mean, there are some errors that are so obvious that you don't need a prior precedent. It's not true? Most of the case law suggests that there has to be... I didn't ask you about most of the case law. Is it true that some errors are so clear that you don't need a prior precedent? Yes, I can conceive of legal errors that are so clear that this court could find... Well, you've got a defendant that is saying in this case that the meaning of loss is so clear that you don't require a prior precedent in the circuit. Well, to turn to the merits, I think that the appellant is incorrect about that. And this court, as far back as 1994 in the Stern decision, held that loss is a deceptively simple notion. This court has long understood that loss in the context of the guidelines is not as straightforward as the appellant suggests. Indeed, other let's start with first principles. This is a... The guidelines are a closed ecosystem, a statutory scheme that consists of terms of art and context matters. This is not simply common usage. We have to look at the context. And if you look at 1B1.3, which states that offense is the object of the offense, I would say that 1B1.3 actually suggests that loss may unambiguously include intended loss. And if you look at the Banks decision, Banks only considers dictionary definitions of loss. Well, Kaiser tells courts to use their entire interpretive toolbox, and Banks essentially uses one tool. But if you look at the Williams decision out of the District of Connecticut, I think that's an excellent example of how the court might consider the context of the word loss, the fact that the guidelines instruct courts to consider the object of the offense in assessing offense characteristics, and also consider the perverse consequences that occur when we don't take intended loss into account. And this court has previously recognized in Haggard that the guidelines aren't designed to reward unskilled fraudsters who fail at their efforts. In Chorney, this court noted that wealthy defendants who can repay a victim's losses aren't protected by the guidelines from the intended loss. And so here I think there is ambiguity in loss, but I don't think that the court needs to reach that decision. Mr. Block, one loose end. Do I correctly read your brief saying you agree with the defendant that we should reverse the restitution award to the extent it included the TD auto loan? Yes, that's correct. Thank you. Thank you. Thank you, counsel. At this time, counsel for the appellant would reintroduce himself on the record. He has a two-minute rebuttal. Chauncey Wood for the appellant. I'm going to try and make three points very quickly. First, the government claims Lewis is controlling. This is a very specific factual question. So Lewis dealt with a different factual question, whether a controlled substance offense, the definition includes inchoate offenses like conspiracy. This is a different factual question. I submit a simpler question linguistically, what the definition of loss is. So Lewis does not control for that determination of that factual question. I can win consistent with this court's holding in Lewis. The second point, the government suggested there are no cases demonstrating plain error. I submit that's wrong. Castillo, we submitted a post-argument letter just yesterday, which is precisely this situation. Kaiser error, Ninth Circuit had prior case law from its own circuit, and it held that, notwithstanding that case law, the winds have changed. Kaiser has woken us from our slumber, as the Third Circuit put it. And so this is a new day, and Kaiser controls plain error, Castillo. I submit the government was wrong about that. And then finally, to make reference to the place I land, the rule of lenity. To the extent there's any question here, this is a question of liberty. And I commend the court to Judge Stephen Bibas's concurrence in United States v. Nasr, N-A-S-I-R, en banc decision. He spoke, I think, eloquently and the most clearly about where we are right now. He said, for decades, we and every other circuit have followed the Supreme Court's guidance in Stinson. That meant we gave nearly dispositive weight to the sentencing commission's commentary, not the guidelines plain text. Now the winds have changed. In Kaiser, the Supreme Court awoke us from our slumber of reflexive deference. We must look at things fresh. Old precedents no longer hold. As we rework our sentencing guideline cases, lenity is the tool for the job. And his ultimate point was that when you have a question of liberty, the Supreme Court instructs us to use lenity to ensure that we do not unfairly deprive people of liberty. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.